IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>ABEL SOUZA,<br><br>　　　　　Defendant. | Case No. 19-cr-00117-DKW-1<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |

Approximately 13 months into his 84-month sentence, Defendant Abel Souza asks the Court to reduce his sentence to time served because his medical conditions, in light of the COVID-19 pandemic, present an extraordinary and compelling reason warranting such a reduction. The Court disagrees, and, for the reasons set forth below, his motion is DENIED.

## **RELEVANT BACKGROUND**

On September 24, 2019, Souza pled guilty to a methamphetamine distribution-related offense. Dkt. Nos. 23, 26. On January 8, 2020, the Court sentenced Souza to 84 months' imprisonment and four years of supervised release. Dkt. Nos. 37, 38. The Court departed significantly downward from the sentencing guideline range—135 to 168 months' imprisonment—because of Souza's age, employment record, physical condition, pre-sentence rehabilitation, willingness to address addiction issues, and substantial assistance to the Government. Dkt. No.

39 at 2–3. Souza self-surrendered and started his term of imprisonment on February 19, 2020. *See* Dkt. Nos. 37, 38.

On February 12, 2021, Souza filed a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("compassionate release motion"). Dkt. No. 43. Souza argues his age (56 years old) and medical conditions—principally, chronic kidney disease, obesity, hypertension, and severe sleep apnea—in light of the COVID-19 pandemic, present an extraordinary and compelling reason warranting his immediate release. Dkt. No. 43-1 at 8. On March 10, 2021, the Government filed a response opposing any sentence reduction, Dkt. No. 50, to which Souza replied on April 5, 2021, Dkt. No. 71. This order follows.

## LEGAL STANDARD

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations in original) (quoting 18 U.S.C. § 3582(b)). Such circumstances must be "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Dillon*, 560 U.S. at 827, 831; *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003).

Congress carved out one such circumstance in 18 U.S.C. § 3582(c)(1)(A)(i). A court may "modify a term of imprisonment" upon an inmate's motion if:

2

1. the inmate exhausted "all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" on her behalf or 30 days has lapsed since the relevant warden received a request to do so;

2. the inmate has established that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable [Sentencing Commission] policy statements";

3. the court considers the sentencing factors set forth in 18 U.S.C. § 3553(a) and finds the inmate is "not a danger to the safety of any other person or the community," as provided under 18 U.S.C. § 3142(g).

*See* 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13 (policy statement). The inmate bears the burden of establishing the requirements for a sentence reduction by a preponderance. *See, e.g.*, *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998); *see also Walton v. Arizona*, 497 U.S. 639, 650 (1990) (a defendant's due process rights "are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency"), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 609 (2002).

## DISCUSSION

The parties appear to dispute only the second and third requirements detailed above.[1] The Government argues that, even though Souza has medical conditions putting him at a greater risk of a severe reaction to COVID-19, his situation is not

---

[1] The Government does not explicitly acknowledge that the exhaustion requirement has been met, nor does it argue it has not been met. *See* Dkt. No. 50. The Court assumes then that the issue is conceded. *See In re El Dorado Imp. Corp*, 335 F.3d 835, 839 (9th Cir. 2003) (where a party "does not dispute [the] issue . . . we treat it as conceded"). The Court independently finds Souza has satisfied the exhaustion requirement. *See* Dkt. No. 43-4 at 15 (acting Warden denying compassionate release request on October 20, 2020).

extraordinary and compelling because the low number of infections at his facility means he is not a high risk of contracting the virus. Dkt. No. 50 at 4–6. Moreover, the Government argues, the goals of sentencing would not be served if Souza was released after serving less than 20 percent of his sentence. *Id.* at 7–8. The Court agrees with the Government, and, for the reasons explained below, Souza's compassionate release motion is DENIED.

## I. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A)(i) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons" and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" (the "Commission"). As this Court has explained, it is bound by the Commission's Commentary in U.S.S.G. § 1B1.13 regarding what constitutes an "extraordinary and compelling" reason warranting a sentence reduction. *See, e.g.*, *United States v. Aruda*, No. 14-CR-00577-DKW, 2020 WL 4043496, *2–*5 (D. Haw. July 17, 2020).[2]

Accordingly, the Court applies the following framework to determine whether COVID-19 presents an extraordinary and compelling reason warranting a reduction in sentence:

---

[2] While Souza disagrees with the Court, nothing he argues or cites compels a different result. *See* Dkt. No. 43-1 at 24.

> [A]n inmate must necessarily establish the following three elements by a preponderance of the evidence: (1) the inmate is "suffering from a terminal illness," or a "serious" physical or cognitive condition; (2) that condition puts the inmate at a high risk of becoming seriously ill from COVID-19; and (3) if the inmate were to contract COVID-19, the inmate's ability "to provide self-care within the . . . correctional facility" would be "substantially diminishe[d]" and the inmate would "not [be] expected to recover."

*United States v. Kazanowski*, No. 15-CR-00459-DKW-5, 2020 WL 3578310, at *7 (D. Haw. July 1, 2020) (alterations in original) (quoting U.S.S.G. §1B1.13 n.1(A)).

The Court—like the Government, Dkt. No. 50 at 6—recognizes Souza suffers from conditions—chronic kidney disease, severe obesity, and hypertension[3]—recognized by the CDC as placing him at greater risk of having a severe reaction to COVID-19.[4] But as the Court has often explained, demonstrating a high risk of becoming seriously ill from COVID-19 requires showing not only that a defendant is a member of an at-risk group, but also that there is "a high risk of contracting the virus because of the number of positive COVID-19 cases at the facility where [the defendant] is housed." *See, e.g.*, *United*

---

[3] Souza is severely obese, with a body mass index over 40. Dkt. No. 48-1 at 10 (listing his weight as 285 pounds on February 28, 2020); Dkt. No. 32 at 14 (listing his height as 70 inches); s*ee also* Dkt. No. 43-1 at 8; Dkt. No. 50 at 6. He also suffers from chronic kidney disease and hypertension. Dkt. No. 48-1 at 10, 43; *see also* Dkt. No. 43-1 at 8–9; Dkt. No. 50 at 6.

[4] *See COVID-19 (Coronavirus Disease): People at Increased Risk for Severe Illness—People with Certain Medical Conditions*, CDC (updated Mar. 15, 2021) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 6, 2021) (listing those with BMIs of 40 or higher, and those with chronic kidney disease as having an increased risk of severe illness if they contract COVID-19; listing those with hypertension as possibly having an increased risk).

5

*States v. Rodrigues*, No. 16-CR-00529-DKW, 2020 WL 5351029, *5 (D. Haw. Sept. 4, 2020).[5]

As of this order, the Bureau of Prisons ("BOP") is reporting *zero* inmates and five staff at FCI Sheridan, where Souza is housed, as currently infected with COVID-19.[6] Indeed, these numbers are virtually unchanged over the last month.[7] *See* Dkt. No. 50 at 3. While these numbers—and the trend they represent—are not conclusive as to the potential for future spikes at FCI Sheridan, they provide strong evidence that the chance of Souza contracting the virus *at this time* is hardly significant.[8] *Cf. United States v. Cornelio*, No. 17-CR-00321-DKW, 2020 WL 6021466 *3 (D. Haw. Oct. 12, 2020) (finding the defendant demonstrated a high risk of contracting the virus where 398 inmates and 6 staff were then testing positive for the virus). This conclusion is bolstered by the BOP's efforts to

---

[5]This Court is not alone in requiring a defendant to produce evidence that the number of COVID-19 cases at his facility creates a high risk of contracting the virus. *See, e.g.*, *United States v. Williams*, 2020 WL 4586860, at *3 (D. Haw. Aug. 10, 2020).
[6]*COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Apr. 6, 2021).
[7]*COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Apr. 6, 2021).
[8]Souza argues that the Court should not rely on BOP's reported cases to assess the risk of Souza contracting the virus at his facility. Dkt. No. 53 at 2–8. Souza instead argues the Court should credit his lived experience. *Id.* But that experience is little more than the same general risk—both inside and outside of correctional facilities—of coming into contact with an infected person and the challenges with stopping all spread of COVID-19. *See id.* While the Court appreciates those risks are real, it relies on the BOP's case numbers to assess the significance of the risk to Souza.

vaccinate both staff and inmates in all BOP facilities.[9] Thus, Souza has not met his burden of showing there is a significant risk of him contracting COVID-19 at his facility.

Even if he had, Souza has not demonstrated that should he contract the virus, his ability "to provide self-care within the . . . correctional facility" would be "substantially diminishe[d]" and he would "not [be] expected to recover." *See* U.S.S.G. § 1B1.13 n.1(A). The Court recognizes that the more comorbidities one has, the higher risk of a severe reaction to COVID-19.[10] Souza suffers from two underlying health conditions that put him at a higher risk of severe reaction (severe obesity and chronic kidney disease), and one condition that might do so (hypertension).[11] But this is not the only relevant data point. FCI Sheridan reports

---

[9] As of this order, BOP reports that 169 staff members and 619 inmates at FCI Sheridan have received the vaccine. *COVID-19 Coronavirus: COVID-19 Vaccine Implementation*, BOP, https://www.bop.gov/coronavirus/ (last visited Apr. 6, 2021). The Court respects Souza's decision to forgo vaccination until he has more information, Dkt. No. 53 at 9–14, but these vaccination numbers are still relevant as having a significant portion of the inmate and staff population vaccinated can lower the risk of community spread. *See When You've Been Fully Vaccinated*, CDC, (updated Apr. 2, 2021) https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last visited Apr. 6, 2021).

[10] *See COVID-19 (Coronavirus Disease): People at Increased Risk for Severe Illness—People with Certain Medical Conditions*, CDC (updated Mar. 15, 2021) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 6, 2021).

[11] *See COVID-19 (Coronavirus Disease): People at Increased Risk for Severe Illness—People with Certain Medical Conditions*, CDC (updated Mar. 15, 2021) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 6, 2021).

7

that 58 inmates and 13 staff have recovered from the virus.[12]  Significantly, there have been *no* COVID-19-related deaths reported at the facility.[13]  Again, these facts are not conclusive as to Souza's prospects should he contract the virus, but they provide clear evidence that FCI Sheridan's screening and treatment protocols lead to the effective recovery of those who become infected.  At minimum, Souza has presented no evidence to the contrary.

Because Souza has failed to demonstrate an extraordinary and compelling reason warranting a sentence reduction, his compassionate release motion is DENIED.

## II.     Section 3553(a) Factors & Risk of Danger to the Community

Even if Souza presented an extraordinary and compelling reason warranting a sentence reduction, the Court must consider any such reduction in light of the sentencing factors set forth in 18 U.S.C. § 3553(a) and determine Souza is "not a danger to the safety of any other person or the community, as provided under [18 U.S.C. §] 3142(g)."  *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.

Souza argues "the Court must consider 'the most up-to-date picture' of [his] history and circumstances."  Dkt. No. 43-1 at 27 (quoting *Pepper v. United States*,

---

[12] *COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Apr. 6, 2021).
[13] While it concerns the Court that *other facilities* have had COVID-19-related inmate deaths, that fact does not materially bear on whether Souza can be expected to provide self-care and recover *at his facility* should he become infected with the virus.

8

562 U.S. 476, 492 (2011)).  The Court agrees.  But other than the looming presence of COVID-19 both within and outside the facility, little has changed with regard to the application of Section 3553(a) in the just-over-a-year in which Souza has been incarcerated.  To date, Souza has served roughly thirteen months or approximately fifteen percent of his sentence.  Dkt. No. 38 at 2 (Souza was ordered to self-surrender on February 19, 2020).  This is simply an insufficient amount of time to meet the goals of sentencing.

As factors counseling in favor of release, Souza points to his abusive childhood, letters from supporters writing on his behalf at sentencing, and that his criminal history before this most recent offense was far in the past.  Dkt. Nos. 43-1 at 29–30.  He also points to *pre-sentencing* drug treatment he completed.  *Id.* at 30–32.  But these were all factors the Court considered at sentencing.  In short, nothing that has occurred *since sentencing* convinces the Court that Souza's 84-month sentence remains anything but "sufficient, but not greater than necessary . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public."  *See* 18 U.S.C. §3553(a)(2).  Further, given Souza's flight from law enforcement officers and discarding of drugs and drug paraphernalia into the community, Dkt. No. 32 at 6–7, the Court cannot conclude that he is no longer a danger to the community.

Thus, for the independent and sufficient reasons that the Section 3553(a) factors counsel against release and Souza remains a threat to community safety, Souza's motion for compassionate release is DENIED.

## **CONCLUSION**

For the reasons set forth herein, Souza's motion for compassionate release, Dkt. No. 43, is DENIED.

IT IS SO ORDERED.

DATED: April 6 , 2021 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*United States v. Abel Souza*, Criminal No. 19-00117-DKW-1, **ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**